IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

DEC 0 1 2003

Michael N. Milby, Clerk

| | | |
|---|---|---|
| TERRY STEWART | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| MISSOURI PACIFIC RAILROAD | § | |
| COMPANY, MISSOURI PACIFIC | § | Civil Action No. H-02-4854 |
| RAILROAD COMPANY D/B/A | § | |
| UNION PACIFIC RAILROAD, | § | |
| UNION PACIFIC RAILROAD, | § | |
| UNION PACIFIC RAILROAD | § | |
| COMPANY | § | |
| AND UNION PACIFIC RAILROAD | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT'S MOTION FOR COMPLETE SUMMARY JUDGMENT

Dated:  December 1, 2003

Respectfully submitted,

OF COUNSEL:
Anissa C. Paddock
State Bar No. 24001950
Federal I.D. No. 23990
and
AKIN GUMP STRAUSS HAUER & FELD LLP
711 Louisiana, Suite 1900
Houston, Texas 77002
(713) 220-5800  (Telephone)
(713) 236-0822  (Telecopier)

**Holly H. Williamson**
State Bar No. 21620100
Federal I.D. No. 8591
711 Louisiana, Suite 1900
Houston, Texas 77002
(713) 220-8136  (Telephone)
(713) 236-0822  (Telecopier)

**ATTORNEY IN CHARGE FOR DEFENDANTS**

## TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT ...........................................................................1

II.    BACKGROUND FACTS ...................................................................................3

    A.    Employment Background ........................................................................3

    B.    Quanell X Rallies ...................................................................................3

    C.    Stewart and his Co-Workers Violate Union Pacific's Lunch Policy ......................4

    D.    The Remainder of the 2001 Year .............................................................5

III.   SUMMARY JUDGMENT STANDARD .............................................................5

IV.   ARGUMENT AND AUTHORITIES ..................................................................6

    A.    Stewart's Claims of Discrimination Fail as A Matter of Law. ................................6

        1.    Burden of Proof.................................................................................6

    B.    Plaintiff Makes No Showing of Race Discrimination ...............................................7

        1.    Stewart has no *prima facie* case of discrimination regarding his receipt of discipline from Union Pacific.............................................8

        2.    Plaintiff has no basis to support his vacation and his overtime discrimination claims...............................................................10

        3.    Stewart's Graffiti Claim also Fails as a Matter of Law. .............................11

    C.    Stewart Cannot Support Any Claim of Retaliation................................................14

        1.    Burden of Proof...............................................................................14

        2.    Plaintiff can make no showing that he suffered any adverse ultimate employment decision based on his participation in the Quanell X rallies. ...............................................................15

        3.    Plaintiff cannot demonstrate a causal connection between any participation in protected activity and his termination. ...............................15

    D.    Plaintiff Provides No Evidence to Support his Disparate Impact Claim. ..............16

    E.    No Intentional Infliction of Emotional Distress......................................................17

        1.    No Extreme and Outrageous Conduct. ......................................................17

        2.     Alternatively, Plaintiff Cannot Establish Severe Emotional Distress.................................................................................................19

F.    Plaintiff's Negligent Hiring and Negligent Supervision Claims Also Fail As A Matter of Law .................................................................................19

G.    No Evidence of Diminished Earning Capacity .....................................................21

V.    CONCLUSION.....................................................................................................22

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ajaz v. Continental Airlines,*
    156 F.R.D. 145 (S.D. Tex. 1994)................................................................21

*Anderson v. Douglas & Lomason Co., Inc.,*
    26 F.3d 1277 (5th Cir. 1994) ...................................................................13

*Auguster v. Vermilion Parish Sch. Bd.,*
    249 F.3d 400 (5th Cir. 2001) ... ................................................................7

*Boyd v. State Farm Ins. Cos.,*
    158 F.3d 326 (5th Cir. 1998), *cert. denied*, 526 U.S. 1051, 119 S. Ct. 1357 (1999)..............13

*Burlington Indus., Inc. v. Ellerth,*
    524 U.S. 742, 118 S. Ct. 2257 (1998) .......................................................8

*Byers v. The Dallas Morning News, Inc.,*
    209 F.3d 419 (5th Cir. 2000).......... ...............................................13, 14

*Cannizzaro v. Neiman Marcus, Inc.,*
    979 F. Supp. 465 (N.D. Tex. 1997)...........................................................20

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)........... .................... ..................................................5

*Clayton v. Nabisco Brands, Inc.,*
    804 F. Supp. 882 (S.D. Tex  1992) ..........................................................18

*Cochrane v. Houston Lighting & Power Co.,*
    996 F. Supp. 657 (S.D. Tex. 1998) ...........................................................8

*Cook v. Fidelity Invs.,*
    908 F. Supp. 438 (N.D. Tex. 1995)..........................................................20

*Crawford v. Formosa Plastics Corp.,*
    234 F.3d  899 (5th Cir. 2000) ....................................................................7

*Dean v. Ford Motor Credit Co.,*
    885 F.2d 300 (5th Cir. 1989) .....................................................................17

*Felton v. Polles,*
    315 F.3d 470 (5th Cir. 2002) .......................................................................8

*Gonzales v. Carlin,*
    907 F.2d 573 (5th Cir. 1990) ................... .......... .....................................14

*Griggs v. Duke Power Co.,*
    401 U.S. 424 (1971) ............................................................................................ 16

*Huckabay v. Moore,*
    142 F.3d 233 (5th Cir. 1998) ............................................................................ 19

*Jackson v. Widnall,*
    99 F.3d 710 (5th Cir. 1996) .............................................................................. 19

*Jenkins v. Orkin Exterminating Co.,*
    646 F. Supp. 1274 (E.D. Tex. 1986) ................................................................ 16

*Johnson v. Merrell Dow Pharm., Inc.,*
    965 F.2d 31 (5th Cir. 1992) ........................................................................ 17, 18

*Jones v. Flagship Int'l,*
    793 F.2d 714 (5th Cir. 1986) *cert. denied,* 487 U.S. 1065 (1987) ...................... 14

*Little v. Liquid Air Corp.,*
    37 F.3d 1069 (5th Cir. 1994) ............................................................. 5, 6, 10, 11

*Long v. Eastfield College,*
    88 F.3d 300 (5th Cir. 1996) .............................................................................. 13

*MacArthur v. University of Tex. Health Ctr.,*
    45 F.3d 890 (5th Cir. 1995) .............................................................................. 18

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ............................................................................................ 6

*McKethan v. Texas Farm Bureau,*
    996 F.2d 734 (5th Cir. 1993) ............................................................................ 19

*McMillan v. Rust College, Inc.,*
    710 F.2d 1112 (5th Cir. 1983) .......................................................................... 14

*Medina v. Ramsey Steel Co.,*
    238 F.3d 674 (5th Cir. 2001) ............................................................................ 16

*Messer v. Meno,*
    130 F.3d 130 (5th Cir. 1997) *cert. denied,* 525 U.S. 1067 (1999) ................. 14-15

*Munoz v. H & M Wholesale, Inc.,*
    926 F. Supp. 596 (S.D. Tex. 1996) ................................................................... 19

*Nowlin v. Resolution Trust Corp.,*
    33 F.3d 498 (5th Cir. 1994) .............................................................................. 16

*Palasota v. Haggar Clothing Co.,*
    342 F.3d 569 (5th Cir. 2003) ........ ............... ..................... ............................ 14

*Pfau v. Reed,*
    125 F.3d 927 (5th Cir. 1997) *cert. granted, vacated on other grounds*
    119 S.Ct. 32 (1998)................................................................................................ 20

*Ramirez v. Allright Parking El Paso, Inc.,*
    970 F.2d 1372 (5th Cir. 1992) ................................................. .......................... 18

*Reeves v. Sanderson Plumbing Prods. Inc.,*
    120 S. Ct. 2097 (2000) ............................................................................................. 7

*Roark v. Kidder, Peabody & Co., Inc.,*
    959 F. Supp. 379 (N.D. Tex. 1997)....................................................................... 17

*Rowe v. Sullivan,*
    967 F.2d 186 (5th Cir. 1992) ................................................................................. 19

*Swanson v.GSA,*
    110 F.3d 1180 (5th Cir.), *cert. denied,* 522 U.S. 948 (1997) ................ ............... 15

*Texas Dep't of Cmty. Affairs v. Burdine,*
    450 U.S. 248 (1981)................................................................................................. 6

*Travis v. Board of Regents of The Univ. of Texas System,*
    122 F.3d 259 (5th Cir. 1997), *cert. denied,* 522 U.S. 1148 (1998)............................ 9, 11, 16

*Ulrich v. Exxon Co., U.S.A., Div. of Exxon Corp.,*
    824 F. Supp. 677 (S.D. Tex. 1993) ....................................................................... 18

*Vadie v. Mississippi State Univ.,*
    218 F.3d 365 (5th Cir. 2000), *cert. denied,* 531 U.S. 1113 (2001)........................ 14

*Wallace v. Methodist Hosp. Sys.,*
    271 F.3d 212 (5th Cir. 2001), *cert. denied,* 535 U.S. 1078 (2002)......................... 7

*Ward v. Bechtel Corp.,*
    102 F.3d 199 (5th Cir. 1997) ................................................................................. 8

*Wilson v. Monarch Paper Co.,*
    939 F.2d 1138 (5th Cir. 1991) ............................................................................... 17

## STATE CASES

*Atchison T. & S.F. Ry. Co. v. O'Merry,*
    727 S.W.2d 596 (Tex. App.—Houston [1st Dist.] 1987, no writ) ......................... 20

*Behringer v. Behringer,*
    884 S.W.2d 839 (Tex. App.—Fort Worth 1994, writ denied) ............................................ 19

*Boyles v. Kerr,*
    855 S.W.2d 593 (Tex. 1993) ................................. ................................................ 21

*First Valley Bank of Los Fresnos v. Martin,*
    55 S.W.3d 172 (Tex. App.—Corpus Christi 2000, no writ) ............ ..... ........................... 21

*GTE Southwest, Inc. v. Bruce,*
    998 S.W.2d 605 (Tex. 1999) ...................................................................................... 17

*Gonzales v. Willis,*
    995 S.W.2d 729 (Tex. App.—San Antonio 1999, no pet.) .................................... 20

*Metropolitan Life Ins. Co. v. Haney,*
    987 S.W.2d 236 (Tex. App.—Houston [14[th] Dist.] 1999, pet  denied) ................................ 20

*Otis Engineering Corp. v. Clark,*
    668 S.W.2d 307 (Tex. 1983) ...................................................................................... 20

*Stinnett v. Williamson County Sheriff's Dep't,*
    858 S.W.2d 573 (Tex. App.—Austin 1993, writ denied) ............................ ........................ 20

*Twyman v. Twyman,*
    855 S.W.2d 619 (Tex. 1993) ........................................................................... 17, 19

*Vincent v. West Tex. State Univ.,*
    895 S.W.2d 469 (Tex. App.—Amarillo 1995, no writ) ........................................................ 20

## STATUTES AND AUTHORITIES

FED. R. CIV. P. 56 .................................................................................................................... 5

RESTATEMENT (SECOND) OF TORTS § 46 (1965) ....................................................................... 16

900533 0005 5411261 v1 WEST

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERRY STEWART | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| MISSOURI PACIFIC RAILROAD | § | |
| COMPANY, MISSOURI PACIFIC | § | Civil Action No. H-02-4854 |
| RAILROAD COMPANY D/B/A | § | |
| UNION PACIFIC RAILROAD, | § | |
| UNION PACIFIC RAILROAD, | § | |
| UNION PACIFIC RAILROAD | § | |
| COMPANY | § | |
| AND UNION PACIFIC RAILROAD | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT'S MOTION FOR COMPLETE SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Union Pacific Railroad Company[1] ("Union Pacific" or "Defendant") files this Motion for Complete Summary Judgment and respectfully shows the Court the following:

### I.
### SUMMARY OF ARGUMENT

This is an employment case brought by Terry Stewart ("Stewart"), who is a machinist employed by the Union Pacific Railroad Company. Stewart contends that Union Pacific discriminated against him on the basis of his race and retaliated against him after he voiced complaints of alleged "racial injustice" at Union Pacific after a co-worker forwarded an email to

---

[1] Plaintiff's employer is the Union Pacific Railroad Company. Missouri Pacific Railroad Company no longer exists and it never did business as the Union Pacific Railroad. Likewise, there are no entities identified merely as "Union Pacific Railroad" and no entity under the name of Union Pacific Railroad Corporation.

other co-workers (not Stewart) containing a fake math test, entitled, "New York City – Revised High School Math Proficiency Exam."[2]  Stewart voiced his complaints regarding this email by participating in protest rallies organized by Quanell X and the New Black Panther party outside of the Union Pacific Settegast shop in the Fall of 2001.

While Union Pacific recognizes Plaintiff's right to participate in Title VII protected activities, such activities do not insulate Plaintiff from Union Pacific's standard policies and procedures.  Accordingly, when Plaintiff left Union Pacific's premises for his twenty minute lunch period in without telling his supervisor and did not return for two hours, all in violation of Union Pacific's standard policies, Union Pacific was justified in charging Plaintiff with a discipline.  Furthermore, Union Pacific was also justified in requiring Plaintiff to follow its vacation and overtime policies.

Thus, Stewart's federal lawsuit boils down to the following collection of perceived "injustices:"

- 2001 – Stewart accepted a "Level 2" discipline for leaving the work premises during his lunch period for two hours. [Ex. 1; Stewart Dep. at 242:11-19].  This discipline resulted in one year of probation with no loss in pay or benefits.  [*Id.* at 200:19-25].

- 2001 – Union Pacific allowed Stewart to take off all of his vacation days for 2001, but not on the one particular day that he wanted to take off.  [*Id.* at 115:16-23].

- 2001 – A supervisor initially questioned Stewart's application for an hour and 46 minutes of overtime after Stewart waited eighteen days to turn in a time adjustment form.  Union Pacific ultimately paid Stewart for this time.  [*Id.* at 195:25; 196:1].

- 2001 – On November 17 and November 30, 2001, an unidentified person or persons wrote the word "pimp" on Terry Stewart's locker. [*Id.* at 158:10-15].

---

[2] The email is a "math test" that asks word problems alluding to various crimes and proposing calculations of various sums.  The questions are formatted to correlate big city schools with gang activities.   Plaintiff alleges racial discrimination, as well as intentional infliction of emotional distress, from this email.  As demonstrated below, the employee who forwarded the email, Darryl Church, did not forward the email directly to Stewart.

In addition to his employment claims, Stewart adds claims of "negligent" discrimination, diminished earning capacity, and intentional infliction of emotional distress. As discussed below, these state law claims are as lacking in merit as are Stewart's employment claims. For these reasons, Defendant respectfully requests that the Court dismiss all claims raised by Stewart with prejudice pursuant to Fed. R. Civ. P. 56.

## II.
## BACKGROUND FACTS

### A.   EMPLOYMENT BACKGROUND

Union Pacific hired Terry Stewart ("Stewart") as a locomotive machinist in 1998.[3] [Ex. 1; Stewart Dep. at 10:25;11:1]. Prior to working at Union Pacific, Stewart worked for the City of Houston for twelve years as an auto and truck mechanic. [*Id.* at 62:3-15; 68:17-21]. Specifically, Stewart worked for the City of Houston as a diesel mechanic [*Id.* at 65:15-17]. Although Stewart claims that he was not terminated from the City of Houston and that he voluntarily resigned after a "conflict of interest" arose because of his involvement with his brother's auto mechanic shop, the City of Houston actually indefinitely suspended Stewart after it discovered Stewart was improperly directing city funds to his brother's business. [*Id.* at 249:13-22; Ex. 4; Stewart's Employment Records from the City of Houston].

### B.   QUANELL X RALLIES

On September 27, October 23,  and November 19, 2001 Terry Stewart and other Union Pacific employees participated in Quanell X-led rallies to protest an email entitled "New York City – Revised High School Math Proficiency Exam." [Ex. 3; EEOC Charge Response].

---

[3] Defendant relies upon the pleadings on file in this action and the deposition of Plaintiff Terry Stewart to support its Motion for Complete Summary Judgment. In presenting Plaintiff's deposition testimony to the Court, Defendant reserves the right to dispute this evidence at a trial on the merits, and in no way admit that Stewart's allegations are true. Stewart's testimony is presented for the limited purpose of demonstrating that his allegations are insufficient as a matter of law, and that Defendant is entitled to entry of summary judgment.

Although Stewart admits his co-worker never sent the email to him directly, he contends it created discrimination against him and therefore he joined the protest. [Ex. 1; Stewart Dep. at 197:23-25; 198:1-2; 10-13]. Despite having no knowledge of Quanell X's position on women, other religions, other nationalities, and other races, and having never read any articles describing Quanell X's philosophies or views. Stewart participated in these rallies. [Ex. 1; Stewart 152:4-23]. As seen below, Stewart now attempts to use his participation in rallies to insulate himself from company rules and policies.

**C.    STEWART AND HIS CO-WORKERS VIOLATE UNION PACIFIC'S LUNCH POLICY**

On October 17, 2001 Stewart and two co-workers, Cedric Emanuel and Leopoldo Ramirez, left Union Pacific premises during the work hours without telling their supervisor, in violation of Union Pacific's policy. [Ex. 1: Stewart Dep. at 12:2-7; 13:1-6; Ex. 5; Lunch Policy] Stewart further violated this policy by not returning from lunch within twenty minutes. [Ex 1; Stewart Dep. at 13:4-6; Ex. 5; Lunch Policy]. Instead, he returned two hours later, claiming that his coworker's truck broke down.[4]

Lastly, Stewart did not request a time adjustment form to dock himself for the time he spent off company premises until two days after October 17, 2001. [*Id.* at 49:20-25; 50:1-2]. Although Stewart knew that Union Pacific required a time adjustment form, he turned it in much later. [*Id.* at 23:14-24; 49:4-6]. Such failure constituted stealing time from Stewart's employer. Although Stewart was originally charged with a Level 5 discipline, he ultimately received a Level 2 discipline, which resulted in one year probation.

---

[4] Interestingly, Plaintiff and his co-worker, Emanuel, were both ex-City of Houston mechanics who worked on automotive and truck repairs as part of their full-time jobs. [Ex. 1; Stewart Dep. at 62:3-15; 68:17-21]. Stewart, a college-trained mechanic, claims that he did not ask Emanuel what was wrong with his truck, did not help him fix the truck, and that the two did not discuss how the truck miraculously restarted on the way back to work. [*Id.* at 28:6-13].

**D.    THE REMAINDER OF THE 2001 YEAR**

After the rallies and Stewart's violation of the lunch policy, Stewart requested a vacation day on November 21, 2001 which was not in compliance with Union Pacific's vacation request procedures. [Ex. 7; Vacation Policy].  Union Pacific's vacation policy expressly states that no safety days can be taken after November 15, and requests that employees take no floating or personal leave days after November 15.

Although Stewart did not receive the particular day he wanted for vacation, he still took all of his vacation for the year 2001.  [*Id.* at 115:16-23].  On October 26, 2001, Stewart sought an hour and forty-six minutes' worth of overtime after he delayed eighteen days in notifying his manager which particular day he worked.  [*Id.* at 195:25; 196:1].  Finally, on November 17 and 30, 2001, an unidentified person or persons wrote the word "pimp" on Stewart's work locker.  [*Id.* at 158:10-15].  Although Stewart admits that he received his vacation and overtime, and admits that Union Pacific investigated the graffiti on his locker, he still claims discrimination.  For the following reasons, Stewarts claims must fail as a matter of law:

**III.**
**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if no genuine material of fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Under Fed. R. Civ. P. 56(c), the moving party bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record that it believes demonstrates the absence of a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  The nonmovant cannot survive a motion for summary judgment

by resting on the mere allegations of its pleadings, but must designate specific facts showing that there is a genuine issue for trial. *See Little*, 37 F.3d at 1075. Indeed, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Little*, 37 F.3d at 1075 (quoting *Celotex*, 477 U.S. at 322).

## IV.
## ARGUMENT AND AUTHORITIES

Stewart's claims fail as a matter of law and should be dismissed for the following reasons:

### A.   STEWART'S CLAIMS OF DISCRIMINATION FAIL AS A MATTER OF LAW.

Although Stewart maintains that the alleged discriminatory conduct occurred after his participation in the Quanell X rallies and was retaliatory in nature, Stewart has alleged a distinct claim of race discrimination and therefore Union Pacific will address each claim in turn. For each, Stewart cannot meet his *prima facie* burden of proof.

### 1.   Burden of Proof

Stewart's section 1981 and Title VII claims are governed by the *McDonnell Douglas* "pretext analysis." [5]  In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), the U.S. Supreme Court allocated the burden of production and ordered presentation of proof in employment discrimination cases to be utilized in the absence of direct evidence of

---

[5] In discrimination cases based upon circumstantial evidence, courts use the same *McDonnell-Douglas/Burdine* analysis for claims of racial discrimination and retaliation under Title VII and 42 U.S.C. § 1981. *See, e.g., Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996)

discrimination.    The Supreme Court summarized the allocation of proof in employment

discrimination cases as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence
> a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving
> the prima facie case, the burden shifts to the defendant to articulate some
> legitimate, nondiscriminatory reason for the employee's rejection.  Third, should
> the defendant carry this burden, the plaintiff, the plaintiff must then have an
> opportunity to prove by a preponderance of the evidence that the legitimate
> reasons offered by the defendant were not its true reasons, but were a pretext for
> discrimination.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quotations and

citations omitted).  An employer's burden of producing a legitimate, non-discriminatory reason

for a challenged employment decision "is one of production, not persuasion."   *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2106 (2000);  *Crawford v. Formosa Plastics*

*Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The plaintiff bears the ultimate burden of persuading

the trier of fact by a preponderance of the evidence that the employer intentionally discriminated

against her because of her protected status."  *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212,

219 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002).  "'To carry that burden, the plaintiff

must produce substantial evidence of pretext.'"  *Id.* (citing *Auguster v. Vermilion Parish Sch. Bd.*,

249 F.3d 400, 402 (5th Cir. 2001)).

## B.    PLAINTIFF MAKES NO SHOWING OF RACE DISCRIMINATION

In his case against his employer, Stewart asserts that Union Pacific discriminated against

him by (1) placing him on one year's probation (with no decrease in pay) for violating an

established lunch policy; (2) denying him the day of his choice for a vacation day (but allowing

him all of his vacation time); (3) questioning his claim for one hour and forty-six minutes of

overtime pay; and (4) investigating graffiti after it was written on Plaintiff's locker on two

7

separate occasions. As illustrated below, Plaintiff cannot meet his *prima facie* burden on race discrimination of any of his claims.

### 1. Stewart has no *prima facie* case of discrimination regarding his receipt of discipline from Union Pacific.

To establish a *prima facie* case of discrimination, a plaintiff must demonstrate that (i) he belongs to a protected group; (ii) that he was qualified for his position; (iii) that he suffered an adverse employment action; and (iv) he suffered the adverse action due to his membership in the protected class. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997); *Cochrane v. Houston Lighting & Power Co.*, 996 F. Supp. 657, 663 (S.D. Tex. 1998). The Supreme Court has noted that a "tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 2268 (1998) (sexual harassment).

The Fifth Circuit curtailed this analysis even further, proposing an extension of its application of the "ultimate employment decision" analysis in Title VII retaliation cases to Title VII disparate treatment cases in general:

> Ultimate employment decisions include acts such as hiring, granting leave, discharging, promoting, and compensating. Our court has suggested that the ultimate employment decision requirement may not apply with respect to disparate treatment, as opposed to retaliation claims. The fact remains, however, that *Dollis*, which involved disparate treatment (as well as retaliation), made no such distinction.

*Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002) (internal citations omitted). The fact remains that Stewart only received probation for his infraction and therefore *did not* suffer any adverse employment action by either the Supreme Court's or the Fifth Circuit's standards. Stewart received no change in pay, no change in benefits, and no change in position or seniority. As

8

such, he suffered no adverse employment action and therefore cannot establish a key element of his *prima facie* case.

Furthermore, Stewart cannot substantiate his claim that his discipline was based on his race. Stewart admitted that knew he was limited to a twenty minute lunch break. [Ex. 1; Stewart Dep. at 12:2-4]. He knew that Union Pacific paid him during that lunch break. [*Id.* at 12:5-7]. He knew he needed to return to work within twenty minutes. [*Id.* at 13:1-3]. And, he admitted that he was not back to work within the twenty minute time period. [*Id.* at 13:4-6]. Furthermore, Stewart admitted that he did not clock out from work, and did not turn his request for a reduction in time (known as a time adjustment form) until *two days* after the lunch incident occurred. [*Id.* at 23:9-24; 49:20-25; 50:1-2]. Stewart's failure to address his time adjustment caused Union Pacific officials to charge him with a Level 5 discipline for stealing time away from his job.

Furthermore, although Stewart provided counsel with testimony that non-African American individuals left the premises for lunch for longer than twenty minutes, he admitted that he does not know whether these individuals who left the property told their supervisors they were leaving (in compliance with Union Pacific policies). [Ex. 1; Stewart Dep. at 92:1-5]. He admitted he did not know whether these individuals' supervisors asked the individuals to bring back lunch for the rest of the group. [*Id.* at 93:11-14]. Furthermore, Plaintiff never spoke to his supervisor to ask whether that supervisor knew that individuals were leaving or to report additional infractions. [*Id.* at 97:20-25; 98:1]. Thus, Stewart's basis for his assertions of race discrimination for his discipline boils down to his own assumptions and unsubstantiated suppositions. A plaintiff's subjective beliefs cannot support a claim of racial discrimination. *See generally, Travis v. Board of Regents of The Univ. of Texas System,* 122 F.3d 259, 266 (5th Cir.

1997), *cert denied*, 522 U.S. 1148 (1998); *Little,* 37 F.3d at 1075 (noting a plaintiff cannot defeat summary judgment by relying on her own conclusions, unsubstantiated assertions, conjecture, or subjective beliefs).  Thus, as a matter of law, his claims of discrimination based on his lunch discipline must fail.

### 2.  Plaintiff has no basis to support his vacation and his overtime discrimination claims.

In an obvious attempt to lump every conceivable managerial disagreement with his employer into his federal lawsuit, Stewart also alleged that Union Pacific discriminated against him when it denied him his choice of vacations days and when it initially questioned his one hour and forty-six minutes of overtime pay.[6]  With respect to his particular  vacation day, Stewart failed to follow the policy when he requested a day off on November 21, 2001.  This request violated the vacation policy in that Union Pacific states that no safety days, floating vacation days, or personal leave days shall be taken after November 15, 2001.[7]  With regard to the overtime issue, Stewart submitted his form to Richard McCown for approval.  In this form, Stewart claimed that he worked on October 8, 2001, but did not submit his form until October 26, 2001 a full eighteen days later.  Ordinarily, workers submit their time forms within 24-48 hours after an overtime shift.  After so much time had passed, McCown could not verify whether Stewart had actually worked the overtime on October 8, 2001.  After further review, however, Union Pacific approved the overtime and Stewart received his overtime pay. [Ex. 1; Stewart Dep. 189:21-23].

---

[6] As discussed in more detail below, Stewart admits he received all of his vacation time and was paid for this overtime.

[7] An employee may schedule vacation at the beginning of the year to occur after November 15, 2001, but this vacation falls under a separate category.

Stewart fails to establish a prima facie case for multiple reasons. First, neither of these claims rise to the level of an adverse employment action. Stewart admits that he took all of his vacation days in 2001, but just did not receive a *particular* day that he wanted off from work. [Ex. 1; Stewart Dep. at 115:16-23].[8] With respect to his overtime, Stewart admits he *received* his payment for one hour and fourteen minutes of overtime. [*Id.* at 189:21-23.] In fact, Stewart estimated that approximately one-third of his income, or $20,000, was made in overtime at Union Pacific in the year 2001 alone. [*Id.* at 214:8-21] Stewart has suffered no loss in pay, no leave issues, and no loss in benefits. He cannot demonstrate an adverse employment action with these claims and therefore they must fail.

Furthermore, as with his discipline claim, Stewart cannot not tie these claims to his race and cannot demonstrate that the decision to schedule his vacation in a certain manner or Union Pacific's questioning his delayed overtime slip relates to his race in any way. In fact, Stewart admitted in his deposition that other employees, including white employees, could have been denied their preference for vacation. [*Id.* at 215:18-24]. Stewart claims of race discrimination based his on vacation leave and overtime are based on conjecture and speculation and thus, cannot stand. *See generally, Travis,* 122 F.3d at 266; *Little,* 37 F.3d at 1075.

### 3.   Stewart's Graffiti Claim also Fails as a Matter of Law.

Stewart claims that Union Pacific discriminated against him based upon incidents of graffiti, written by an unknown person or persons, on his work locker. As demonstrated, this claim fails because the word "pimp" is a racially neutral term, and even if such comments were

---

[8]   Q:   So none of it was denied to you? I mean you got to take all the days?

A:   I got to take the days, but it was denied after November 15th.

Q:   No. But you got to take the days, you just didn't get to take the one day when you wanted to; is that right?

A:   Yes, ma'am.

assumed to be racist, they constitute stray remarks and do not imply any discrimination against Stewart.

In November of 2001, Stewart found the word "pimp" written on his locker twice.[9] [Ex. 1; Stewart Dep. at 158:10-15].  After the discovery of the graffiti, Union Pacific acted quickly and appropriately to investigate and remedy the situation.  [Ex. 3; Stewart EEOC Charge Response].  After Stewart reported the graffiti to the Union Pacific's EEO hotline, Union Pacific assigned the report to Mike Thomas, its Special Agent of Graffiti.  [Id.; Ex. 1; Stewart Dep. at 171:3-7].  Stewart admits that Union Pacific investigated the incidents, that the investigator took photographs of his locker, that Union Pacific cleaned the graffiti off his locker after both incidents, that the director of the shop appeared disappointed and "didn't seem very pleased with [the graffiti]," and his supervisor was "disgusted about it."  [Ex. 1; Stewart Dep. at pp. 167-179].

Stewart's race discrimination claim fails because he cannot demonstrate that he was targeted because of his race.  Despite the unpleasant nature of the word "pimp," the term itself has no racial implications.  Stewart himself admitted that pimps are not limited to a certain race and could be of any particular race or sex:

> Q:   Is it your contention that pimps are limited to a certain race?
> A:   No, ma'am.
> Q:   And in fact you'd agree there could be pimps of any particular race or sex?
> A:   Possibly.

---

[9] Interestingly, Stewart, nicknamed "T-Bone," found more offense in the word "pimp" than in the bumper stickers that he chose to place on his own locker which stated, "Railroaders do it night and day" and "Don't couple up without protection."  [Ex. 1; Stewart Dep. at pp. 164 and 165].  Stewart admits that he put the bumper stickers on his locker himself.  [Id. at 164:7-9].

[Ex. 1; Stewart Dep. at 228:19-24].  Therefore, as an initial matter, Plaintiff cannot demonstrate that the word printed on his locker by an *unidentified person* contained a message with any racial animus.[10]

Furthermore, to the extent that the word "pimp" engenders any racial connotations, the incidents constitute stray remarks, and Stewart's claim fails because he cannot tie the graffiti incidents to any adverse employment action.  *See Boyd v. State Farm Ins.,* 158 F.3d 326 (5th Cir. 1998), *cert. denied,* 526 U.S. 1051, 119 S. Ct. 1357 (1999).  In *Boyd,* an African-American employee claimed that State Farm denied him a promotion and ultimately terminated him based on his race.  As part of his claim, he produced evidence that his supervisor referred to him once as "Buckwheat" at a social gathering and also called him a "Porch Monkey" on another occasion.  The Fifth Circuit upheld the district court's summary judgment dismissal holding, "The mere utterance of a racial epithet is not indicia of discrimination under Title VII."  *Id.* at 330 (citing *Anderson v. Douglas & Lomason Co., Inc.,* 26 F.3d 1277, 1295 (5th Cir. 1994)).  The Fifth Circuit also determined the employee failed to link these comments to any adverse employment action as they were stray remarks.  *Id.*

Stewart admits that the graffiti incidents were not related to work issues.  [Ex. 1; Stewart Dep. at 229:9-12].[11]  Furthermore, Plaintiff's complaints of "adverse employment actions" occur *before* these incidents of graffiti and therefore, these stray remarks have no bearing on any alleged adverse employment actions.  *See Boyd,* 158 F.3d at 330 (timing a consideration from which a reasonable juror could or could not infer discrimination).  Lastly, Stewart claims that he

---

[10] To be sure, the word. "pimp" could refer to Stewart's own prior arrest for prostitution, an arrest he blatantly denied in his sworn deposition testimony. [*See* Ex. 10; Stewart Criminal History Records; Ex. 1; Stewart Dep. at 225:24-25; 226:1].

[11]   Q:  Do you believe that the word "pimp" placed upon your locker was in some way related to – well, related to work issues?

A:  I wouldn't say that.

13

does not know who wrote the word on his locker either time. [Ex. 1; Stewart Dep. at 170:19-21; 178:16-21]. Without knowing who issued the remark, stray or not, Stewart cannot demonstrate that any decision-maker or individual who may have influenced an employment action wrote this remark on Stewart's locker. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003). As such, Stewart cannot support his *prima facie* case of discrimination against Union Pacific, and this claim must also fail.

## C.   STEWART CANNOT SUPPORT ANY CLAIM OF RETALIATION.

### 1.   Burden of Proof

The same burden-shifting analysis applied in disparate treatment cases applies to retaliation cases. *Byers*, 209 F.3d at 427 ("As this Court has held, the *McDonnell Douglas* test applied to Title VII disparate treatment cases is also applicable to Title VII unlawful retaliation cases.") (citing *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996)); *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983). To establish a *prima facie* case of retaliation, a plaintiff must show:

(1)   he engaged in a protected activity,

(2)   an adverse employment action occurred, and

(3)   there was a causal connection between participation in the protected activity and the adverse employment decision.

*Gonzalez v. Carlin,* 907 F.2d 573, 578 (5th Cir. 1990); *Jones v. Flagship Int'l*, 793 F.2d 714, 724 (5th Cir. 1986), *cert. denied*, 487 U.S. 1065 (1987)); *Vadie v. Mississippi State Univ.*, 218 F.3d 365 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001). To support a *prima facie* burden of retaliation, the Fifth Circuit also requires that the plaintiff demonstrate that the adverse employment action was an ultimate employment decision. *Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997), *cert. denied* 525 U.S. 1067 (1999). An ultimate employment decision includes

"decisions to hire, discharge, promote, compensate, or grant leave, but not events such as disciplinary filings, supervisor's reprimands, or even poor performance reviews." *Id.*

### 2. Plaintiff can make no showing that he suffered any adverse ultimate employment decision based on his participation in the Quanell X rallies.

As demonstrated with Plaintiff's race discrimination claims, Plaintiff has received only probation for a violation a company lunch policy. *See supra.* He took all of his vacation days for the year 2001, and received his overtime pay in full. *Id.* No ultimate employment action exists and therefore Plaintiff cannot satisfy his *prima facie* burden to support his retaliation claim. *Messer*, 130 F.3d at 140.

### 3. Plaintiff cannot demonstrate a causal connection between any participation in protected activity and his termination.

Furthermore, Plaintiff cannot make a *prima facie* showing because there is no evidence of a causal connection between his alleged participation in Title VII protected activities and his various claims. The simple fact that Stewart participated in Quanell X rallies does not insulate Stewart from being disciplined nor does this participation, without more, establish a causal connection for his retaliation claim. "[T]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case. . . . Title VII's protection against retaliation does not permit EEOC complainants to disregard work rules or job requirements." *Swanson v. GSA*, 110 F.3d 1180, 1188 n. 3 (5th Cir), *cert. denied*, 522 U.S. 948 (1997).

In considering whether a causal link exists between Stewart's protected activity and his termination, the Court may consider three factors to determine whether a causal link exists: (1) the employee's past disciplinary record; (2) whether the employer followed its typical policies and procedures when taking adverse action against the employee, and (3) the temporal relationship between the employee's conduct and the adverse act. *See Nowlin v. Resolution Trust*

15

*Corp.*, 33 F.3d 498, 507-08 (5th Cir. 1994) (citing *Jenkins v. Orkin Exterminating Co.*, 646 F. Supp. 1274, 1277 (E.D. Tex. 1986)).

In this instance, Union Pacific followed its policies and procedures when disciplining Stewart for leaving the premises for lunch for two hours and for failing to dock his time. Furthermore, there is no evidence of retaliatory animus. Plaintiff must demonstrate that Union Pacific's decision to discipline him was based on its knowledge of his Title VII protected activity. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). Plaintiff's subjective belief that Union Pacific disciplined him for participating in protected activity is insufficient to support a claim of retaliation. *See Travis*, 122 F.3d at 266. Put simply, there is no evidence, either direct or indirect, that Plaintiff's termination was retaliatory. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for retaliation.

**D.    PLAINTIFF PROVIDES NO EVIDENCE TO SUPPORT HIS DISPARATE IMPACT CLAIM.**[12]

In *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), the Supreme Court applied Title VII to employment practices that appear neutral but are discriminatory in operation. Thus, the Court determined that Title VII prohibits not only intentional discrimination but also the unintentionally discriminatory consequences of employment practices that apply to all employees. *Id.* To support a claim of disparate impact discrimination, Stewart must demonstrate that a neutral policy has a harsher or adverse impact on a protected class. *Id.* Not only does Stewart provide no indication of any neutral policies with adverse impact, but he testified that the way the policies are enforced intentionally form the bases of his claims. [Ex. 1; Stewart Dep. at 234:12-24]. Stewart has no evidence of any neutral policy that is adversely affecting a protected

---

[12] Although Plaintiff made no disparate impact allegations in his charge with the EEOC, his first original complaint contains the allegation, "Defendants engaged in a particular employment practice that causes disparate impact [sic] on its employees on the basis of national origin and race." Pl.'s First Orig. Pet. at ¶ V(26) (F). Out of an abundance of caution, Union Pacific addresses this claim.

16

class. Furthermore, he has limited his claims to intentional discrimination claims. Based on this testimony, Plaintiff cannot meet his initial burden and therefore any disparate impact claim should be dismissed.

**E.      NO INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

To prevail on a claim of intentional infliction of emotional distress, Plaintiff must prove that (i) the defendant acted intentionally or recklessly; (ii) the conduct was extreme and outrageous; (iii) the actions of the defendant caused the plaintiff emotional distress; and (iv) the resulting emotional distress was severe. *Johnson v. Merrell Dow Pharm., Inc.*, 965 F.2d 31, 33 (5th Cir. 1992). Plaintiff can neither establish extreme and outrageous conduct nor severe emotional distress.

**1.      No Extreme and Outrageous Conduct.**

Texas courts have found liability for "extreme and outrageous" behavior only where the "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). Liability, however, does not extend to "mere insults, indignities, threats, annoyances, or petty oppression." *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir. 1989) (applying Texas law).

Specifically, in the employment context, the Fifth Circuit, applying Texas law, has repeatedly stated that a claim for intentional infliction of emotional distress will not lie for "mere employment disputes." *See, e.g., Johnson*, 965 F.2d at 33-34; *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991); *see also, GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999). One reason ordinary employment disputes do not rise to the level of "extreme and outrageous" behavior is because an employer's proper management of its business necessarily

17

includes its ability to supervise, review, criticize, demote, transfer, discipline, and terminate employees. *Johnson*, 965 F.2d at 34. Extreme and outrageous conduct will be found only in the most unusual circumstances. *Ramirez v. Allright Parking El Paso, Inc.*, 970 F.2d 1372, 1376 (5th Cir. 1992);   Plaintiff has presented no evidence sufficient to establish such extreme and outrageous conduct.

Stewart claims that the most outrageous thing that Union Pacific has done to him is threaten to fire him when he returned from lunch two hours late. [Ex. 1; Stewart Dep. 8:15-20]. As a matter of law, Union Pacific's alleged conduct does not rise to the level of extreme and outrageous conduct under Texas law. *See, e.g., MacArthur v. University of Tex. Health Ctr.*, 45 F.3d 890 (5th Cir. 1995) (that the supervisor "may have lost control, behaved intemperately, rudely reprimanded her or overreacted in reporting her mistake to her supervisor" does not demonstrate conduct that rises to the level of outrageous conduct); *Ulrich v. Exxon Co., U.S.A., Div. of Exxon Corp.*, 824 F. Supp. 677, 687 (S.D. Tex. 1993) (excessive criticism for tardiness and poor grammar, being mistakenly accused of absenteeism, and being aggressively questioned without time for response "clearly fall within the rubric of 'employment disputes.'"); *Clayton v. Nabisco Brands, Inc.*, 804 F. Supp. 882 (S.D. Tex. 1992) (no intentional infliction of emotional distress where, over the course of five years, plaintiff was once called a "damn liar," was on some occasions yelled at for things that his managers erroneously thought he should have done or should not have done, and was criticized and disciplined for acts of other employees). Stewart has demonstrated no conduct on Union Pacific's part that merits a finding of intentional infliction of emotional distress.  Instead, he has demonstrated that Union Pacific has continued to respond to his requests for investigations, payments of overtime, and employee concerns.  Accordingly,

Union Pacific requests that this Court dismiss Stewart's claim of intentional infliction of emotional distress as a matter of law.

### 2. Alternatively, Plaintiff Cannot Establish Severe Emotional Distress.

Plaintiff may only recover for intentional infliction of emotional distress if the emotional distress suffered because of Union Pacific's alleged behavior is "severe." *See Huckabay v. Moore*, 142 F.3d 233, 234 (5th Cir. 1998) (applying Texas law); *Twyman*, 855 S.W.2d at 621-22. By *severe*, it is meant that "the distress inflicted is so extreme that no reasonable man could be expected to endure it without undergoing unreasonable suffering." *Huckabay*, 142 F.3d at 234; *Behringer v. Behringer*, 884 S.W.2d 839, 844 (Tex. App.—Fort Worth 1994, writ denied). A plaintiff must prove more than mere worry, anxiety, vexation, embarrassment or anger. *See Munoz v. H & M Wholesale, Inc.*, 926 F. Supp. 596, 613 (S.D. Tex. 1996).

Plaintiff's conclusory self-diagnosed physical difficulties are insufficient to establish severe emotional harm. *See McKethan v. Texas Farm Bureau*, 996 F.2d 734, 742 (5th Cir. 1993), *cert. denied*, 510 U.S. 1046 (1994). When asked about his emotional distress, Plaintiff claimed that he could not sleep, "was kind of restless," and that he "just felt like not doing anything, just felt like, you know, like just real stressed out." [Ex. 1; Stewart Dep. at 186:2-5]. Such claims of stress do not support Plaintiff's intentional infliction of emotional distress claims. *McKethan*, 996 F.2d at 742. Because Plaintiff does not allege facts sufficient to establish severe emotional distress, Union Pacific is entitled to judgment as a matter of law on this claim.

### F. PLAINTIFF'S NEGLIGENT HIRING AND NEGLIGENT SUPERVISION CLAIMS ALSO FAIL AS A MATTER OF LAW

Plaintiff's claims of negligent hiring and negligent supervision are preempted by Title VII and by the Texas Commission on Human Rights Act ("TCHRA"). "The TCHRA provides the exclusive state-law means for redress of employment discrimination and preempts claims for

19

discrimination brought under other state-law theories." *Cannizzaro v. Neiman Marcus, Inc.*, 979 F. Supp. 465, 478-79 (N.D. Tex. 1997) (TCHRA preempts state law claims of negligent training, negligent supervision and negligent retention); *Cook v. Fidelity Invs.*, 908 F. Supp. 438, 442 (N.D. Tex. 1995); see also *Vincent v. West Tex. State Univ.*, 895 S.W.2d 469, 473-74 (Tex. App. – Amarillo 1995, no writ); *Stinnett v. Williamson County Sheriff's Dep't*, 858 S.W.2d 573, 576-77 (Tex. App. – Austin 1993, writ denied) (TCHRA preempted a public employee's whistleblower claim for retaliatory discharge based on filing an age discrimination charge with the Texas Commission on Human Rights).[13]

Because the whole notion of race discrimination is a product that would not exist but for its statutory recognition under Title VII and TCHRA, there is no common law duty to prevent employees from harassment. Thus, Stewart cannot satisfy one of the most basic elements of a negligence claim: duty. *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983) ("[I]n order to establish tort liability, a plaintiff must prove the existence and breach of a duty owed to him by the defendant.")

Furthermore, because Stewart cannot, as a matter of law, maintain a national discrimination or retaliation claim against Union Pacific, as a matter of law, there was no negligence related to any alleged race discrimination or retaliation.

Finally, Stewart testified that he suffered no physical injuries as a result of Union Pacific's conduct in this case. [Ex. 1; Stewart Dep. at 235:17-25; 236:1-8]. Thus, to the extent

---

[13] *But see Gonzales v. Willis*, 995 S.W.2d 729 (Tex. App. – San Antonio 1999, no pet.). Although the Texas Fourth Court of Appeals (San Antonio) split from other Texas circuits by allowing negligence claims in a discrimination case, this ruling directly conflicts with other Texas courts of appeals and with the findings of federal district courts in the Fifth Circuit. *See supra*. Furthermore, this ruling conflicts with the Fifth Circuit's ruling that claims of negligence by federal employees were preempted by Title VII. *See Pfau v. Reed*, 125 F.3d 927, 932 and 933 n. 2 (5th Cir. 1997), *cert granted, vacated on other grounds*, 119 S. Ct. 32 (1998); *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996); *Rowe v. Sullivan*, 967 F.2d 186 (5th Cir. 1992).

that he brings claims of negligence based on the alleged conduct of Union Pacific, he is, in effect, bring a claim of negligent infliction of emotional distress. "The Texas Supreme Court has expressly rejected such a cause of action holding that 'there is no general duty in Texas not to negligently inflict emotional distress.'" *Ajaz v. Continental Airlines*, 156 F.R.D. 145, 149 (S.D. Tex. 1994) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993)). Accordingly, Stewart's claims of negligence must be dismissed on summary judgment.

**G.    NO EVIDENCE OF DIMINISHED EARNING CAPACITY**

Amidst the myriad of Plaintiff's claims, he has alleged that Union Pacific's discriminatory practices have created an injury to him that has resulted in diminished earning capacity damages. This state claim applies to personal injury damages and has no place in an employment discrimination case. Generally, a party must show a physical impairment that affects his ability to earn a living to recover for lost earning capacity. *Metropolitan Life Ins. Co. v. Haney*, 987 S.W.2d 236, 245 (Tex. App. – Houston [14th Dist.] 1999, pet. denied); *Atchison T. & S.F. Ry. Co. v. O'Merry*, 727 S.W.2d 596 (Tex. App. – Houston [1st Dist.] 1987, no writ); *but see First Valley Bank of Los Fresnos v. Martin*, 55 S.W.3d 172 (Tex. App. – Corpus Christi 2001, no writ) (evidence of lost earnings sufficient where plaintiff quit his job and could not seek another in a malicious prosecution and libel case). Furthermore, lost earnings are generally based on the assumption that, but for the alleged injury, the plaintiff would have continued to earn the same rate of pay. *O'Merry*, 727 S.W.2d at 600. Plaintiff's claim is specious, at best, in that Plaintiff admits he has suffered no physical injury from Union Pacific and he is still able to earn a living. [Ex. 1; Stewart Dep. at 235:17-25; 236:1-8]. Based on Plaintiff's own testimony and admissions, he cannot support any claim for diminished earning capacity. He has not demonstrated an injury that affects his ability to earn a living, nor has he demonstrated that his

rate of pay has decreased in any way. Accordingly, Defendant asks this Court to dismiss this claim, as is warranted.

## V.
## CONCLUSION

At the end of the day, Plaintiff presents a case where he:

(1)     no adverse employment action occurred as that term is defined by this circuit;

(2)     Seeks damages for vacation time that he has taken in full and overtime for which he has received payment;

(3)     lodges a disparate impact claim although he denies any unintentional discrimination; and finally, for good measure,

(4)     lodges state claims with no factual support.

Stewart cannot demonstrate that any of Union Pacific's actions were associated with his race or his involvement with any protected activities. For these reasons, Stewart's lawsuit should be dismissed with prejudice, and Union Pacific respectfully requests that it be awarded its costs incurred in defending this lawsuit.

22

Respectfully submitted,

*Holly H. Williamson*

OF COUNSEL:
Anissa C. Paddock
State Bar No. 24001950
Federal I.D. No. 23990
and
AKIN GUMP STRAUSS HAUER & FELD LLP
711 Louisiana, Suite 1900
Houston, Texas 77002
(713) 220-5800  (Telephone)
(713) 236-0822  (Telecopier)

**Holly H. Williamson**   *by perm. per*
State Bar No. 21620100
Federal I.D. No. 8591
711 Louisiana, Suite 1900
Houston, Texas 77002
(713) 220-8136  (Telephone)
(713) 236-0822  (Telecopier)

**ATTORNEY IN CHARGE FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that I sent a copy of Defendant's Motion for Complete Summary Judgment to Plaintiff to the following counsel by certified mail, return receipt requested, on December ___ , 2003:

Mr. Mark Midani
Law Offices of Mark O. Midani
5433 Westheimer, Suite 620
Houston, Texas 77056

*Anissa C Paddock*

Anissa C. Paddock

23

# The Exhibit(s) May

# Be Viewed in the

# Office of the Clerk

